*415 OPINION
By GEIGER, PJ.
This matter is before this court on appeal on questions of law and fact from a judgment of the Common Pleas Court of Greene County.
In the petition it is asserted that the plaintiff is engaged in the distribution of natural gas in various counties of the state incifuding Greene County; that it acquires the gas from the Ohio Fuel Gas Company, with which it is not affiliated; that it has'no other supply of natural gas; that for many years plaintiff has been supplying gas to defendant under a rate which enabled it to earn less than 6% per annum on its investment; that prior to June 30, 1941, the defendant requested the Public Utility Commission of Ohio to provide an engineer to make an investigation of the gas situation existing in the village of Yellow Springs and the possibility of a rate reduction and an ordinance was introduced in the village providing for a drastic reduction in the gas rate as compared with the existing rate, that thereupon, the plaintiff was requested by the engineers of the Utility Commission to furnish certain information relative to the reasonable gas rate; that while plaintiff was endeavoring to comply with this request, and had in part done so, the council, on the date above named, passed an ordinance fixing the price which the plaintiff may charge for natural gas furnished in the Village of Yellow Springs during the period of five years. The rate fixed was less than the rate then in existence, providing as it did $1.00 for the first 500 cubic feet per month, 50c per 1000 cubic feet for all over 500 cubic feet with an additional charge for failure to pay at the date due.
It is asserted that the defendant had no knowledge of the passage of the ordinance and did not become informed of its final passage until the 26th of September, 1941; that the rates provided for in the ordinance are unfair, unreasonable and will result in confiscation of plaintiff’s property and investment. This assertion is based upon the allegation that the property is valued at $61,000.00; that the new ordinance would result in a reduction of 20.58% in its net income on the basis of the 1940 business; that the plaintiff had procured from the Ohio Fuel Gas Company a reduction in the price of gas which would result in a reduction of the gas purchase price for the defendant of approximately 11% of the purchase cost; and that upon the basis of the business transacted in said town by the plaintiff, the application of the ordinance rate, with the reduction of the cost of purchase price, would operate to give to the plaintiff a net income over the 12 months of $412.54. Plaintiff alleges that during 1940, the monthly income was $2275 and that the application of the rates provided by the ordinance would reduce the same approximately $450 per month. It is averred that the enforcement of the ordinance would result in the operation of the system at a loss and would impair and probably confiscate the investment and unless enjoined the defendant will attempt to enforce the provisions of the ordinance. *416 Plaintiff avers that it has no adequate remedy at law and prays that on final hearing the injunction be made perpetual.
A temporary order of injunction was issued and afterwards a motion by the Village for an order dissolving the temporary restraining order was made for the reasons stated therein and that if the order is not modified in toto that it be modified to protect the interests of the customers.
An answer is filed by the defendant admitting certain matters alleged in the petition but denying all others.
FINDING AND JUDGMENT OF THE COURT.
(a,) Finding of Facts.
The plaintiff having requested a finding of facts and separate conclusions of law, the court on January 29, 1942, announced its finding of facts and conclusions of law.
The court finds that the ordinance was duly published and that the plaintiff permitted the 60 days to expire without pursuing the remedy provided for under the statute to appeal to the Public Utility Commission. The court then examines the items of depreciation and improvement, the tax valuation and the gross income for the year ending December 31, 1940, the income under the old ordinance furnishing a net return of $4127; that the plaintiff received a reduction of the wholesale rate from the Ohio Fuel Gas Company, and the court finds that from the best evidence obtainable the net earnings of the Company for the year, 1941, if the same amount of gas was used, would be approximately $1658.21, “which is more or less of a guess because the plaintiff, in the court’s opinion, failed to prove the material facts of its petition by a preponderance fo the evidence”.
(b) Conclusions of Law.
As conclusions of law the court finds that the act creating the Public Utility Commission and conferring upon it jurisdiction to fix rates
(1) Does not prevent a public utility from applying to the court of equity from a rate making ordinance.
(2) Before the court is authorized to grant an injunction it is necessary for the utility to show that the ordinance is confiscatory.
(3) A court of equity is not bound by the statutes and rules used 'by the Public Utility Commission in determining rates which would permit the Commission to consider the replacement value of the plant. The Utility Commission would have the right to establish value of the property, but the court has no such authority and in order to determine whether the ordinance is confiscatory or not the court must look at the actual real value of the property.
(4) A public utility applying to a court of equity for relief from a rate making ordinance has the burden of proof and if it fails in this, it is not entitled to the relief prayed for.
Under date of January 29, 1942, an entry was filed in which it is found that the plaintiff has failed to establish the facts alleged in the petition and that by reason thereof the prayer of the petition should be denied and it is ordered that the petition be dismissed and the injunction denied and the temporary restraining order dissolved. It is ordered that the plaintiff refund to its gas customers the difference between the amount collected under the restraining order and the amount that should have been collected.
*417 A motion for new trial is filed and overruled and notice given of intention to appeal.
We are furnished with a very well considered opinion by the court, the essential points of which may be summarized as follows: that the plaintiff claims that the value of the property is $61,-000; that it was purchased in 1926 for $26,000. Some improvements have been made, but the plaintiff has failed to show the amount of those improvements. The property is on the tax duplicate for $7,620. The court comments on the fact that by the testimony of the plaintiff it is admitted that the plaintiff’s valuation of $61,000 is based upon the high prices paid at the present time for labor and material and the court concludes that it can not accept boomtime prices as true value of the property but must accept the value as in ordinary times. The court arrives at the conclusion that the real value of the property devoted to service in the village is between $26,000 and $30,-000. The court then analyzes the claim of the plaintiff that under the present ordinance its return would be $410.34, and after making its own analysis, holds that if corrections are made in items as the court points out, the net income would be $1658.21, providing an income of more than 5% on a valuation of $30,000. The court concludes that the plaintiff failed in other matters and is of the opinion that the rate is not confiscatory ;and that the judgment should be •as in the entry.
Sec. 614-44 GC gives power to a municipality to fix by ordinance the price that the utility may charge for the period covered by the ordinance. The utility within 60 days after the passage of the ordinance may appeal to the Public Utility Commission.
Sec. 614-46 GC provides that if the Commission, after the hearing, shall be of the opinion that the rate fixed by the ordinance is or will be unjust or unreasonable it shall fix and determine a just and reasonable rate which shall be effective for a period of not less than two years and order the same substituted for the rate fixed by the ordinance.
The statutes provide for the method by which the Commission shall arrive at the value of the property. The Commission must take into consideration certain matters enumerated.
If the utility has appealed within 60 days after the passage of the ordinance to the Public Utility Commission, that Commission could have exercised its statutory authority and would have been required to consider all matters set up in the statute as affecting the value of the property. However, the utility did not appeal to the Commission, but comes into a court of equity asserting that the rate-fixed by the ordinance is confiscatory and unconstitutional.
There remains to the utility the right to appeal to the court of equity to restrain an ordinance rate which it claims is so low that its property would be confiscated. The utility had full knowledge-f«em the inception of the ordinance, of its introduction and passage through council and could have appealed to the Public Utility Commission within 60 days but did not do so but seeks relief in a court of Equity.
*418 *417 Counsel for the village has presented authorities which he claims-support the proposition that the Public Utility Commission alone has the jurisdiction and that the court is without authority to pass, upon the questions here at issue. A number of cases are cited and discussed, but we feel we may *418 safely rely upon the case of State ex rel City of Cleveland v Court of Appeals, 104 Oh St 96. It is there held,
“The provision of the act creating the Public Utility Commission and conferring upon it jurisdiction to fix rates in no way withdrew from the courts any of the equitable jurisdiction which they theretofore had.”
Judge Robinson delivering the opinion of the court cites and comments upon many pertinent cases. The pertinent statutes relating to rate fixing are §§3982 and 614-44-46.
Counsel for the utility has cited a large number of cases setting out the necessity of the Commission fixing a value of property upon all questions enumerated within the terms of the public utility statute. We have examined these eases and find them all involved in examinations and findings of a public utility after a case properly came within its jurisdiction. These decisions would, no doubt, be applicable if the matter were before the Public Utility Commission but the utility made á selection of the forum and chose to forego its right to appear before the Public Utility Commission, but now seeks a like remedy before the court of equity.
We have gone over the testimony 'Offered, by the utility wherein it is sought to establish its right to an enhanced rate. We at once recog-nize that much of this evidence, ■while applicable if the case was ■pending before a utility commission, is not pertinent to a question before a court of equity as to •whether or not the rate is confiscatory.
The rate would be confiscatory, if so low that the utility •could not produce an income sufficient to take care of the essential expenses and leave a proper-income upon the property to be paid to the stockholders. Aside from that, we have considered the evidence and are not satisfied that the utility has met the burden imposed upon it of establishing this claimed position by a preponderance of the evidence. Plaintiff’s brief largely centers around the position that if- the court would give proper consideration to the evidence offered that it would arrive at the conclusion that under the disputed ordinance rate there would not be enough income to properly compensate the stockholders.
Complaint is made that a 5% income is not sufficient. It is true it is not large, but in these days it certainly is not confiscatory of the property which produces the same.
The recent case of Federal Power Commission v Natural Gas Pipe Line Company of America, decided by the Unittd States Supreme Court on March 16, 1942, found in the Law Edition, Advance Opinions, Volume 86, p. 699 and 72 Set. 736, is of vital importance and far reaching in its effect. The opinion is by Chief Justice Stone and a number of the other Justices have separate concurring opinions. It is a monumental case and we can not do other than refer- the interested reader to its consideration. It is there held in Syllabus 12, in substance,
Rate making bodies are not bound by any single formula or combination of formulas but are free, within the ambient of their statutory authority to make the pragmatic adjustment called for by the particular circumstances and *419 when a fair hearing has been had the court can not intervene in the absence of a clear showing that the limits of due process have been overstepped. A company for which rates are fixed by the power commission is not entitled to have the annuity basis computed on the basis of reproduction cost rather than on the basis adopted by the commission of cost plus estimated future capital additions.
It is true that it is disclosed that the case was being tried by a power commission, with certain statutory rights, which probably might be compared to our Public Utility Commission. The matters that we have last above cited are to the effect that the commission need not be bound by what has heretofore been regarded as iron clad rules for ascertaining value of property. We might concede that if the Public Utility Commission was fixing the rate in this case it would be bound by the provisions of the statute of Ohio irrespective of how the Supreme Court of the United States has construed the Federal statute.
The court in its opinion states by long standing usage in the field of rate regulation the lowest reasonable rate is one which is not confiscatory in the constitutional sense. The constitution does not bind rate making bodies to the service of any single formula or combination of formulas. The court interestingly discusses the question of going concern value, which has always been a bone of contention in the fixing of utility rates.
Again we state that this case would be more appropriate if we had before us the action of the Public Utility Commission rather than that of a court of equity, but we still cite the case as indicating the tendency to disregard those things which have formerly been held to be essential to the rate making activity.
Mr. Justice Black in his separate opinion on page 714 comments upon the old case of Smyth v Ames, 169 U. S. 466. I think we can gather from the case cited that there has been a new viewpoint of rate making and that even a commission, bound as it is by statutory rules, may take a more elastic view of the process by which a proper rate is to be arrived at.
We come to the conclusion that if the Court of Common Pleas has jurisdiction, as we think it has, it need not pay tribute to rules laid down in the commission statutes, but is at liberty to consider such evidence as may tend to enable it to fix the value of the property upon which the rate of income is to be determined.
Upon a hearing of this case de novo, we are of the opinion that the judgment of the court below was correct and the same may be embodied in the entry in this cause. ,
BARNES & HORNBECK, JJ., concur.